**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

**F I L E D**
May 17, 2012

No. 11-60217

TERESA G. PATRICK,

Plaintiff-Appellant

v.

WAL-MART, INCORPORATED – STORE #155; NATIONAL UNION FIRE
INSURANCE COMPANY OF PITTSBURGH, PENNSYLVANIA,

Defendants-Appellees

Appeal from the United States District Court
for the Northern District of Mississippi

Before JONES, Chief Judge, and PRADO and SOUTHWICK, Circuit Judges.
LESLIE H. SOUTHWICK, Circuit Judge:

The issue before us is whether a claim for a bad faith denial of workers'
compensation benefits was untimely brought by the worker. We agree with the
district court that it was, and AFFIRM.

FACTUAL AND PROCEDURAL HISTORY

Teresa G. Patrick suffered a lower-back injury on July 28, 1997, while
stocking shelves in a Wal-Mart in Senatobia, Mississippi. Wal-Mart's workers'
compensation carrier, National Union Fire Insurance Company, initially denied
coverage. Patrick filed a petition to controvert. After an evidentiary hearing,
Administrative Judge (AJ) Linda Thompson in a September 14, 1999 order held

No. 11-60217

that Patrick had sustained a compensable injury and was entitled to temporary total disability benefits "of $187.01 per week beginning July 8, 1998, and continuing until June 9, 1999." *See* Miss. Code Ann. § 71-3-17(b).

The employer and carrier (collectively "defendants") had argued that the injury was not work-related. Nonetheless, they did not petition for review of the AJ's decision by the Workers' Compensation Commission. *Id.* § 71-3-47; MWCC Proc. R. 10. In October 1999, the defendants paid Patrick $9,649.29 as a lump sum in satisfaction of the temporary benefits that had been awarded.

For work-related injuries such as those Patrick suffered, Mississippi law provides for temporary benefits, payable for a maximum of 450 weeks; also allowed are up to 450 weeks of permanent disability benefits after the worker reaches "maximum medical recovery." Miss. Code Ann. § 71-3-17(a)-(c). Permanent disability benefits would be based on her loss of "wage-earning capacity." *Id.* § 71-3-17(c)(25). The AJ in her 1999 order determined the injury was compensable and the amount of temporary disability benefits. She noted testimony that Patrick had "a permanent medical impairment of 10% to the body as a whole" but concluded it was "too soon" to rule on that issue. Instead, the AJ "ordered that a determination about permanent occupational disability or loss of wage-earning capacity, if any, will be reserved until a later time."

Though Patrick in 1999 was awarded only 11 months of temporary disability benefits, no further orders from a Commission AJ appear until 2005. According to a state court opinion, after 1999 Patrick worked at other jobs, suffered additional injuries, and at some point filed a claim for additional benefits. *Wal-Mart Stores, Inc. v. Patrick*, 5 So. 3d 1119, 1122 (Miss. Ct. App. 2008). Another evidentiary hearing was held, this time before AJ Tammy Harthcock. On September 6, 2005, the AJ found Patrick totally and permanently disabled. The AJ ordered payment of $187.01 for 450 weeks (the same amount as before but for a much longer period) beginning on July 28, 1997,

No. 11-60217

and payment of all reasonable and necessary medical expenses incurred due to the injury. *Id.* at 1122-23. Credit was given defendants for prior payments. The defendants petitioned the Commission for review. It affirmed.

On first-level judicial review, the Circuit Court of Tate County affirmed the permanent benefit award but reversed the finding of liability for some of Patrick's claimed medical expenses. Patrick's appeal was assigned to the Mississippi Court of Appeals, which affirmed the state circuit court. *Id.* at 1121. Patrick's petition for writ of certiorari to the state Supreme Court was denied. *Wal-Mart Stores, Inc. v. Patrick*, 11 So. 3d 1250 (Miss. 2009) (Table). The denial was on April 9, 2009, and the Court of Appeals' mandate issued 21 days later. *Id.*; Miss. R. App. P. 41(b).

On July 9, 2010, Patrick filed a complaint in state circuit court against Wal-Mart and its carrier alleging bad-faith refusal to pay benefits in 1999. She claimed that the defendants' failure to put on proof at the 1999 administrative hearing had shown the absence of any "arguable reason" for their initial denial of compensation. The defendants removed on the basis of diversity of citizenship and then moved to dismiss. They argued that Patrick's suit had accrued 20 days after AJ Thompson's 1999 order and was barred by Mississippi's three year statute of limitations. *See* Miss. Code Ann. §§ 71-3-47, 15-1-49(1).

Patrick argued the statute of limitations did not commence until the Court of Appeals' 2009 mandate. She obtained leave to file a second amended complaint alleging that defendants "refused and continue to refuse" payment "both before and after [the] September 14, 1999 Order." The district court granted motions to dismiss. The court concluded that Patrick's allegations relating to the initial denial of temporary benefits were barred by the statute of limitations. The court also held that the amendments to Patrick's complaint that charged continuing bad faith after the 1999 order failed to satisfy the plausibility requirement for pleadings. Patrick timely appealed.

No. 11-60217

DISCUSSION

Our review of a district court's dismissal for failure to state a claim is *de novo. Amacker v. Renaissance Asset Mgmt. LLC*, 657 F.3d 252, 254 (5th Cir. 2011). "Under Rule 12(b)(6), a claim may be dismissed when a plaintiff fails to allege sufficient facts that, taken as true, state a claim that is plausible on its face." *Id.* To withstand dismissal, a complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Sitting in diversity, we apply the substantive law of Mississippi. *Barden Miss. Gaming Ltd. Liab. Corp. v. Great No. Ins. Co.*, 638 F.3d 476, 478 (5th Cir. 2011). "To determine Mississippi law, we look to the final decisions of Mississippi's highest court." *Estate of Bradley ex rel. Sample v. Royal Surplus Lines Ins. Co.*, 647 F.3d 524, 528-29 (5th Cir. 2011). We also review as persuasive authority the decisions of the Mississippi Court of Appeals. *See Herrmann Holdings, Ltd. v. Lucent Techs., Inc.*, 302 F.3d 552, 558 (5th Cir. 2002).

This case presents a narrow but novel question. There was in 1999 an administrative judge's determination that the defendants should not have denied disability benefits to Patrick. An award of temporary benefits was then made. Once the time to challenge that decision ended, did the three-year period begin in which to bring a civil suit alleging the prior bad faith denial of those benefits even though a final decision on permanent benefits had not yet been reached? Part I of our opinion draws from available Mississippi authorities to conclude that the three-year period commenced in 1999. Thus, Patrick's claim that the initial denial was in bad faith is time-barred.

Part II of the opinion examines whether Patrick's second amended complaint presented claims that overcame the limitations bar. We agree with the district court that the amended complaint failed under *Twombly* and *Iqbal*.

4

No. 11-60217

I.    *Statute of Limitations*

Both parties direct us to a decision by the Mississippi Supreme Court, answering a certified question from this court. *Bullock v. AIU Ins. Co.*, 995 So. 2d 717 (Miss. 2008). The question asked by the court was this:

> Whether an order, issued in 1999, of a Mississippi Workers Compensation Commission Administrative Law Judge which determines only that the named employer and compensation insurer are liable to the named employee for compensation benefits in respect to a particular on the job accidental injury, but does not determine the amount or duration of benefits to be paid or any other matter, becomes final if not appealed by any party to the Commission within twenty days; and, if so, whether the employee claimant has *then* so exhausted his administrative remedies, notwithstanding that the employee's compensation case against the employer and compensation insurer remains pending before the Commission on other issues, such that the three year limitations period under Miss. Code 15-1-49(1) *then* commences and continues to run with respect to a subsequent suit by the employee against the employer or compensation insurer for bad faith failure to pay workers compensation benefits which does not allege any bad faith action or inaction after the expiration of twenty days following the ALJ's referenced order finding compensability.

*Bullock v. AIU Ins. Co.*, 503 F.3d 384, 388 (5th Cir. 2007).

The Mississippi Supreme Court concluded that such an order did not start the limitation period. *Bullock*, 995 So. 2d at 723. Of aid to Patrick is the court's conclusion that the 1999 order was "interlocutory" because there were "substantial rights that remained undetermined – and were specifically reserved for later action." *Id.* at 723. Patrick sees her situation as analogous because AJ Thompson expressly reserved issues concerning permanent disability. Defendants point out, though, that the *Bullock* court also explained that a "decision to grant or deny a specific amount of compensation" made an AJ's order final with respect to the limitations period. *Id.* at 722. Because the 1999 order here made a monetary award, they argue the statute of limitations began to run.

No. 11-60217

When state law does not answer our precise question, we evaluate how the state's highest court would apply existing law to the new question; we must avoid creating or modifying state law. *Gilbane Bldg. Co. v. Admiral Ins. Co.*, 664 F.3d 589, 593 (5th Cir. 2011). Our certified question in *Bullock* asked whether a claimant had exhausted administrative remedies for bringing a bad-faith claim after the initial workers' compensation order by an AJ was entered. *Bullock*, 503 F.3d at 388. The state court's analysis relied primarily on the language of relevant statutes. *See Bullock*, 995 So. 2d at 721-22.

The statute providing for an appeal from an AJ to the Commission states that once an AJ decision to "make or deny an award" is filed, that decision becomes final within 20 days unless a petition for review by the Commission is submitted. Miss. Code Ann. § 71-3-47. Though the term "award" is not defined in the workers' compensation statutes, the *Bullock* court concluded that its frequent use in those statutes is "associated with the grant of a monetary sum." *Bullock*, 995 So. 2d at 721. Consequently, "it is a decision making or denying *compensation*, not a determination of liability or entitlement alone, which constitutes an 'award.'" *Id.* at 722. Therefore in *Bullock,* the first order by the AJ left the question of awarding temporary or permanent benefits pending, which made that decision interlocutory. *Id.* at 723.

We find useful interpretive assistance in a treatise on Mississippi workers' compensation law. The exhaustion principle underlying *Bullock* "bears on conduct (filing a lawsuit) that will take place totally outside the administrative process and will not affect the continuing administrative process." John R. Bradley & Linda A. Thompson, *Mississippi Workers' Compensation* § 11:30 at 612-13 (2011 ed.). Those authors, one of whom was the administrative judge who issued the 1999 order in this case, state that the best way to understand the terms final and interlocutory in *Bullock* are "as a window into exhaustion," which "is a markedly different principle from final-or-interlocutory as applied to

No. 11-60217

the continuing administrative process. The words are the same; the music is not." *Id.* at 611. Among the potentially different consequences of "final" or "interlocutory" are questions such as "whether an appeal is timely or is even allowed at a particular time of the administrative proceedings," and "whether an employer is obligated by law at a particular time to pay benefits." *Id.* at 612-13. We agree with the insights of the treatise authors. We interpret *Bullock* as saying that the failure to make an "award" as that court defined it – an order that includes a grant of money – meant that the AJ's decision was not final for purposes of exhaustion. For this reason, precedents on finality for purposes of appealability of orders do not assist in applying *Bullock*. *E.g., Kukor v. Ne. Tree Serv., Inc.*, 992 So. 2d 1242 (Miss. Ct. App. 2008).

Mississippi precedents before *Bullock* held the "determination that a plaintiff [was] 'entitled' to compensation" was a prerequisite to initiating a bad-faith action. *Bullock*, 995 So. 2d at 723; *see also* Bradley & Thompson, *Workers' Compensation* § 11:30 at 612. A useful explanation of this is in a case discussing the denial of certain medical services and supplies. *Walls v. Franklin Corp.*, 797 So. 2d 973 (Miss. 2001). The court held that a worker could not bring "a bad faith action for refusal to pay for disputed medical services and supplies absent the Commission's prior determination that those services and supplies were reasonable and necessary." *Id.* at 977.

We find *Walls* useful because the worker had a discrete claim for a specific medical service that was allegedly denied in bad faith. The state court did not dispute that a bad-faith claim for denial just of the medical service could be brought, but held that the claim first required exhaustion at the Commission. The *Bullock* court reaffirmed *Walls* and clarified that determining only that a worker was entitled to medical services was insufficient for exhaustion; the Commission must also make an award. *Bullock*, 995 So. 2d at 723.

No. 11-60217

Therefore, the determination in 1999 that the defendants must pay Patrick the specific monetary sums was a necessary event for commencing the statute of limitations. Whether it is also sufficient depends on whether state law suggests that all benefits must first be awarded, not just the initial and temporary disability benefits that were awarded here. We note that in *Walls*, the worker apparently was bringing the bad-faith claim of denial of certain medical services after all other benefits had been paid. *Walls*, 797 So. 2d at 974-75. Even so, the court did not suggest that all claims for benefits had to be resolved at the Commission before any suit for bad faith could be brought.

It is true that in *Bullock* the court stated that the initial order by the AJ was "interlocutory" in part because there were "substantial rights that remained undetermined – and were specifically reserved for later action." *Bullock*, 995 So. 2d at 723. The court seemingly meant no more, though, than what it just finished concluding about the definition of "award": an AJ decision remains interlocutory for purposes of exhaustion of remedies until a monetary sum is awarded. *Id.* at 721-22. Neither *Bullock* nor any other discovered precedent suggests that exhaustion in this context requires that all potential benefits have been awarded. Instead, a claim for bad faith in denying particular benefits is exhausted when an award of those benefits is final.

Requiring all benefits to be awarded before the statute of limitation commences is inconsistent with the manner in which workers' compensation benefits are determined and with the purposes of requiring timely suits. As occurred here and as authorized by statute, there can be long delay between an award of temporary benefits and an award of permanent ones. There also can be, as in *Walls*, independent medical services being provided that may be contested while the temporary or permanent benefits are also being paid. Delay unconnected to the factual or legal finalization of that specific claim interferes with the stated purposes for Mississippi's statutes of limitations:

No. 11-60217

> The primary purpose of statutory time limitations is to compel the exercise of a right of action within a reasonable time. These statutes are founded upon the general experience of society that valid claims will be promptly pursued and not allowed to remain neglected. They are designed to suppress assertion of false and stale claims, when evidence has been lost, memories have faded, witnesses are unavailable, or facts are incapable of production because of the lapse of time.

*Miss. Dep't of Pub. Safety v. Stringer*, 748 So. 2d 662, 665 (Miss. 1999) (quotation marks and citation omitted). The primary claims being made here concern the actions of the employer and carrier in 1997-1999, claims very much based on facts that would need to be reconstructed by witnesses whose memories and availability have become increasingly doubtful.

We conclude that the *Bullock* court, in referring to whether substantial rights still needed to be determined was remarking on the fact that the issue of liability or compensability for certain kinds of benefits is simply the threshold to the complete determination of the entitlement to and amount of those benefits. *See Bullock*, 995 So. 2d at 722-23.

The 1999 AJ order in this case was sufficient under *Bullock* to be an "award." The order granted temporary disability benefits. There was no effort to seek Commission review, and the order became final in 20 days. There is a statute granting the Commission continuing jurisdiction over a case, and awards can be changed in certain circumstances. *See* Miss. Code Ann. § 71-3-53. What impact that statute might at times have need not be resolved today. It is enough to note that it provides that an award can be contested only for one year after the last payment. *Id.* The 1999 order in our case only granted 11 months of temporary benefits, and therefore even if exhaustion might be affected by this re-evaluation provision, that right expired one year after final payment.

The claim for the initial benefits was fully exhausted not later than 2001.

No. 11-60217

With the exhaustion issue settled, we next overlay the cause of action for bad-faith refusal to pay benefits on top of the relevant statute of limitation to determine when the limitations period began on the claim.  A claim of bad-faith refusal to pay workers' compensation benefits has "three essential elements: (1) a contract of workers' compensation insurance existed between the defendant and the plaintiff's employer; (2) the carrier denied the plaintiff's compensable workers' compensation claim without a legitimate or arguable reason; and (3) the denial of benefits constitutes a willful and intentional or malicious wrong." *AmFed Cos., LLC v. Jordan*, 34 So. 3d 1177, 1183 (Miss. Ct. App. 2009) (quoting *Rogers v. Hartford Accident & Indem. Co.*,133 F.3d 309, 312 (5th Cir.1998)). When an employer or carrier refuses to pay statutory benefits "for no arguable reason, such a failure is subject to being regarded as a bad-faith breach of statutory duty."  Bradley & Thompson, *Workers' Compensation* § 11:30 at 607. The suit is one for an intentional tort arising from the act of non-payment. *Whitehead v. Zurich Am. Ins. Co.*, 348 F.3d 478, 481 (5th Cir. 2003).

Patrick needed to bring her claim within three years of the date the "action accrued."  Miss. Code Ann. § 15-1-49.  "Accrual" simply means that a cause of action has become an enforceable claim. *Owens-Illinois, Inc. v. Edwards,* 573 So. 2d 704, 706 (Miss. 1990) (interpreting accrual under this same statute).  AJ Thompson in 1999 found that Patrick (i) suffered a work-related back injury, (ii) was temporarily totally disabled, and (iii) was entitled to benefits of $187.01 per week from the date of her injury to the time she was released by her doctor.  The first two enumerated elements of the claim – existence of a workers' compensation policy and the denial of a claim for benefits – predated the AJ's order. Once administrative exhaustion was achieved by a final award of benefits (and, possibly, by the passage of the time for reconsideration), all elements for a bad-faith claim arising from the denial of those benefits existed.

No. 11-60217

Patrick's first amended complaint claimed that defendants refused to pay "temporary disability benefits" in 1999 and complained that they had "put on no proof during the hearing before Administrative Law Judge, Linda A. Thompson." Further, Patrick claimed that defendants had "no arguable reason [or] any reasonable proof or evidence" contradicting her claim for compensation. The claim initially set forth in the bad-faith suit came far too late.

Though the bad-faith claim for initial benefits is barred, Patrick argues that her amended complaint was based on later awards. We turn to that issue.

## II.   *Failure to State A Claim*

In the second amended complaint, Patrick sought to bring an additional cause of action for continuing bad faith arising after the 1999 order. The defendants moved to dismiss, arguing these allegations were conclusory and failed to comply with Rule 8(a)'s pleading requirements as explained by the Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and *Iqbal*, 556 U.S. at 677-79. To plead facial plausibility, a plaintiff must set forth factual content that permits the courts to draw the reasonable inference that the defendant is liable. *Iqbal*, 556 U.S. at 678. Patrick's alterations added a paragraph and modified another. In one instance of modification, she simply added the phrase "before and after September 14, 1999 Order" to a charge that defendants committed a willful and malicious wrong. This type of recital, which fails to identify the specific time or nature of such wrongs, fails to suffice because it "tenders naked assertions devoid of further factual enhancement." *Id.* (quotation marks and citation omitted).

Patrick's most detailed amendment was the addition of this paragraph:

24. Defendants have engaged in a continuing pattern of bad faith, even after the issuance and entry of Judge Linda Thompson's September 14, 1999 Order, and in fact the Defendants, have among other things, unreasonably delayed and/or denied authorization

and/or payment of reasonable, necessary and worker's comp related medical treatment, as well as permanent indemnity benefits, as ordered by the Mississippi Workers' Compensation Commission and affirmed by the Mississippi Court of Appeals.

This paragraph invokes three potentially cognizable theories of liability. First, "[a]n unreasonable *delay* in resolving a claim can qualify as recoverable bad faith." *Jordan*, 34 So. 3d at 1183 (emphasis added). Second, a bad-faith claim can be maintained if the employer or insurer fails to pay "reasonable and necessary medical services and supplies." *Walls*, 797 So. 2d at 976 (citing Miss. Code Ann. § 71-3-15 (2000)). Third, just like the temporary denial already analyzed, her mention of a permanent benefit denial could be actionable. *See Liberty Mut. Ins. Co. v. McKneely*, 862 So. 2d 530, 533 (Miss. 2003).

The "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Although Patrick argues the defendants delayed and denied payment for medical treatment the AJ ordered, her amendment is devoid of facts to make it plausible and amounts to a "[t]hreadbare recital[] of the elements of a cause of action, supported by mere conclusory statements." *Id.* She does not identify by date or amount or type of service, any of the alleged bad-faith denials and delays. Patrick offers no "factual content allow[ing] [this] court to draw the reasonable inference" that Wal-Mart or National Union responded in bad faith to her claim for permanent benefits. *Amacker*, 657 F.3d at 254 (quotation marks and citation omitted).

Finally, Patrick alleges the district court erred in denying her leave to amend a third time. A plaintiff is entitled only to one amendment as of right; further opportunities are committed to the sound discretion of the trial court. *United States ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 387 (5th Cir. 2003). Although Rule 15(a) embodies a liberal spirit, denial is

warranted in the face of "repeated failure[s] to cure deficiencies by amendments previously allowed." *Id.* at 386 (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). In addition, she did not motion for leave to amend, but instead asked in her opposition to dismissal for an opportunity to "state said facts with greater specificity." The district court did not need to entertain this type of "nested request[] for amendment*." Cent. Laborers' Pension Fund v. Integrated Elec. Servs., Inc.*, 497 F.3d 546, 556 (5th Cir. 2007).

Patrick's original claim is barred by Mississippi's three-year statute of limitations. Her new allegations as to a continuing violation and other instances of bad faith do not state a claim. Thus, the district court properly dismissed the entirety of her second amended complaint.

AFFIRMED.